# EXHIBIT 3

# Receivership Order

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

A true and certified copy.
This _____, 20 18
David W. Bunt, CLERK
U.S. Dist. Court, MD Ga.

By: _____
DEPUTY CLERK

| | |
|---|---|
| VC MACON, GA LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>VIRGINIA COLLEGE LLC,<br><br>*Defendant.* | CIVIL ACTION NO.<br>5:18-cv-00388-TES |

## ORDER APPOINTING RECEIVER AND PRELIMINARY INJUNCTION

This cause coming before the Court on the Emergency Motion for Appointment of General Receiver and Injunction (the "Motion")[1] filed by EDUCATION CORPORATION OF AMERICA, VIRGINIA COLLEGE, LLC and NEW ENGLAND COLLEGE OF BUSINESS AND FINANCE, LLC (collectively, "ECA" or "Debtors"). The Court, being fully advised in the premises and having jurisdiction in this matter, and upon consideration of the Declaration of Mike Ranchino of ECA, and with the consent of Plaintiff, and upon consideration of any and all objections to the relief sought in the Motion; and after hearings on November 7 and 14, 2018 to consider the relief sought in the Motion; and the Court having issued a temporary restraining order on November 7, 2018; and after due deliberation and sufficient cause appearing for the relief sought in the Motion; the Court hereby ORDERS that the Motion is GRANTED as set forth herein. The Court further finds

---

[1] Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and concludes[2] that, in accordance with Rule 65 and Rule 66 of the Federal Rules of Civil Procedure (the "Rules"):

The Court has subject matter jurisdiction under U.S. CONST., art. III, § 2 and 28 U.S.C. § 1332. This Court exercises diversity jurisdiction because the parties are of complete diverse citizenship and the amount in controversy is in excess of $75,000. The Court has ancillary jurisdiction over the request to appoint a receiver and for an injunction, because such relief is substantially related to the claims of the Plaintiff that in addition to creating diversity jurisdiction also raises federal questions and bears a logical relationship to the aggregate core of operative facts surrounding the federal questions. See *U.S. Bank Nat'l Assoc. v. Nesbitt Bellevue Props.*, 866 F.Supp.2d 247, 255 (S.D.N.Y. 2012) (appointing a receiver while exercising diversity subject matter jurisdiction as an ancillary remedy to protect the value of various properties located in six states). Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events giving rise to this action took place in this judicial district and a substantial part of property that is the subject of the action is situated in this judicial district. ECA employs approximately 250 Georgia residents and their Georgia institutions have enrolled in excess of 1,100 active students.

In determining whether to grant or deny a preliminary injunction, the Court must consider whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) that the order is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm that the order would cause to the non-movant; and (4) that the order would not be adverse to the public interest. *See, e.g., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.

---

[2] To the extent any portion of these findings constitute a ruling of law, such portion shall constitute this Court's ruling with respect to the matters so-stated.

1998). In this case, the Court finds that the preliminary injunctive relief set forth in this Order is appropriate because ECA have demonstrated a substantial likelihood of success on the merits; that they will suffer irreparable injury if the injunction is not granted; the injunction will not substantially injure other interested parties; and the injunction will further the public interest.

Federal courts typically consider the following factors when determining whether to appoint a receiver: (1) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (2) imminent danger that property will be concealed, lost, or diminished in value; (3) inadequacy of legal remedies; (4) lack of a less drastic equitable remedy; and (5) likelihood that appointing the receiver will do more good than harm. *See Consolidated Rail Corp. v. Fore River Ry.*, 861 F.2d 322, 326–27 (1st Cir.1988); *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir.1959); *Bookout v. Atlas Fin. Corp.*, 395 F.Supp. 1338, 1342 (N.D.Ga.1974), *aff'd*, 514 F.2d 757 (5th Cir.1975).

Based on an analysis of these factors, the Court finds that a receiver should be appointed because ECA have demonstrated that there is an imminent danger of damage to the Business (defined below) and its stakeholders; ECA's available legal remedies and less drastic equitable remedies are inadequate to protect their interests and the interests of other stakeholders; the probability of harm to ECA and other stakeholders by denial of the appointment of a receiver is greater than the injury to other parties; ECA have demonstrated a substantial likelihood of success on the merits and possible irreparable injury to the interests of ECA and other stakeholders in the Business; the allegations of potential fraud made by the Plaintiff; and ECA have demonstrated that the interests of ECA and other stakeholders will be protected and well served by the receivership.

3

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that John F. Kennedy of Macon, Georgia ("Receiver") is hereby appointed Receiver with respect to all the business, business interests and property of ECA, wherever located, by whomsoever held, without limitation (the "Receivership Property" or "Business"), which shall hereby be vested in a Receivership Estate. Receiver shall provide this Court with his written oath and acceptance to faithfully perform his duties set forth in this Order. The Receiver shall make, execute and deliver to the Clerk of this Court a bond in the sum of [Ten Thousand and No/100 Dollars ($10,000.00)], within five (5) business days after the date of this Order. The Receiver may use assets of the Receivership Estate to pay the costs of any such bond.

The Receiver shall take immediate possession of the Receivership Property and shall have the full power and authority to exercise the usual and customary powers afforded to a receiver under federal common law (except as otherwise limited by an order of this Court), including, but not limited to, the following powers:

> (1) To operate ECA's Business and the Receivership Property in the ordinary course and in compliance with applicable laws, regulations and rules, with a primary focus on financing of the business and other restructuring or sale transactions, with the delivery of academic services continuing to be performed by ECA's current management as overseen by the Receiver and ECA's current boards (including the independent board of New England College of Business and Finance, LLC ("NECB")), provided, however, that, for the avoidance of doubt, consent of the Receiver shall be required for any sale, conveyance, or transfer of Receivership Property outside of the ordinary course of business. The Receiver is authorized to incur and pay expenses incidental to the Receiver's preservation and use of the Receivership Property, and otherwise in the performance of the Receiver's duties, including, upon application to this Court for approval, the power to pay obligations incurred prior to the Receiver's appointment if and to the extent that payment is determined by the Receiver to be prudent in order to preserve the value of Receivership Property and upon approval of the Court;
>
> (2) To do all the things that the board and management of ECA may do in the exercise of ordinary business judgment, or in the ordinary course of the

4

operation of the Business and/or the Receivership Property as a going concern or use of the property subject to the general scope in sub-paragraph 1 above, including, but not limited to, cooperation with ECA's boards with respect to any operational decisions; the continued retention of ECA's management and employees; the maintenance of regulatory and accreditation approvals for all schools owned by ECA or its subsidiaries, including without limitation fully complying with NECHE's accrediting standards applicable to NECB's operations and with ACICS's accrediting standards applicable to all other ECA institutions; the collection of all accounts, incomes, profits and other revenues of the Business and/or the Receivership Property, the purchase and sale of goods or services in the ordinary course of such Business and/or the Receivership Property; the incurrence of unsecured trade debt, the grant of security, including cash collateralization, in connection with issued or the issuance of bonds related to the operation of and licensure for the Business in consultation with Monroe Capital Management Advisors, LLC ("Monroe"), as agent under the Business's existing credit agreement, dated as of September 3, 2015 (the "Monroe Credit Agreement") and payment of expenses of the Business or Receivership Property in the ordinary course, including, without limitation, any amounts due and owing to Monroe or the lenders (the "Monroe Lenders") party to the Monroe Credit Agreement; and, upon application to this Court for approval, the implementation of any key employee retention or incentive plan that the Receiver determines to be necessary or beneficial to the Receivership Estate;

(3)  To maintain any and all existing bank accounts and accounts containing or evidencing securities, funds or cash equivalents, including without limitation deposit and checking accounts, or to open new bank accounts using ECA's tax identification numbers in the convenience of the Receiver and for the benefit of the Receivership Estate;

(4)  To assert any rights, claims, or choses in action of ECA (except to the extent that the rights, claims, or choses in action have been released prior to the commencement of these proceedings) that are Receivership Property or related thereto, to maintain in the Receiver's name or in the name of ECA any action to enforce any right, claim, or chose in action, and to intervene in actions in which ECA is a party for the purpose of exercising the powers under this Order;

(5)  To intervene in, remove, and/or transfer to this Court any action in which a claim is asserted against ECA or any actual or purported guarantor of a real property lease involving ECA or any ECA affiliate, whether such claim is a direct or a derivative claim or the subject of any claim to which any party to such other proceeding holds or asserts any right of indemnification, reimbursement or contribution against ECA, for the purpose of prosecuting or defending the claim and requesting the transfer of venue of the action to this Court, except that this Order does not transfer actions in which a state agency is a party and as to which such state is exercising its police or regulatory powers;

(6) To assert rights, claims, or choses in action of the Receiver arising out of transactions in which the Receiver is a participant;

(7) To pursue in the name of the Receiver for the benefit of the Receivership Estate any claim that may be asserted by any creditor of ECA, if pursuit of the claim is determined by the Receiver to be appropriate in the exercise of the Receiver's business judgment;

(8) To seek and obtain advice or instruction from the Court with respect to any course of action in which the Receiver is uncertain in the exercise of the Receiver's powers or the discharge of the Receiver's duties;

(9) To obtain appraisals with respect to Receivership Property;

(10) To compel by subpoena any person to submit to an examination under oath, in the manner of a deposition in accordance with the Federal Rules of Civil Procedure, with respect to Receivership Property or any other matter that may affect or relate to the administration of the Receivership Estate;

(11) To use, sell, or lease Receivership Property other than in the ordinary course of business, whether as a whole or in parts, as a going concern or otherwise, and to execute such documents, conveyances, and consents as may be required in connection therewith upon application to this Court for approval, and in connection with the exercise of any such powers or authorities as this Court may direct to seek direction from the Court with respect to approval of marketing and notice procedures, to affirm the agreement between ECA and Hilco Real Estate, LLC concerning real estate consulting services and pay the agreed upon compensation to Hilco Real Estate, LLC following approval by this Court, to market and sell ECA's assets to affirm the retention agreement between ECA and Parchman, Vaughan & Company, L.L.C. as investment banker without further order of this Court and pay the agreed upon compensation to Parchman, Vaughan & Company, L.L.C. following approval by this Court, and to seek further orders of this Court authorizing the sale of all or any such assets free and clear of all claims, liens, encumbrances and rights of others;

(12) To obtain credit and other financial accommodations solely in Receiver's capacity as receiver for the Receivership Estate, grant liens, and grant adequate protection, in consultation with Monroe and Monroe Lenders, that in the Receiver's business judgment is beneficial to the Receivership Estate upon application to this Court for approval;

(13) To seek employment of one or more attorneys, accountants, appraisers, auctioneers, or other professional persons who do not hold or represent an interest adverse to the Receivership Estate to represent or assist the Receiver in carrying out the Receiver's duties; provided, however: (a) the Receiver is hereby authorized to retain Cooley LLP as regulatory

6

counsel and to honor ECA's payment arrangements with Cooley LLP for fees incurred in its representation of ECA prior to the date hereof; (b) the Receiver is hereby authorized to retain counsel pursuant to an engagement letter in form and substance satisfactory to the Receiver; and (c) the Receiver is hereby authorized to retain a financial advisory firm to the Receiver pursuant to an engagement letter in form and substance satisfactory to the Receiver;

(14) To disavow, reject, impair or terminate any contract, agreement, understanding, lease or occupancy agreement in or to which ECA is a party that in the Receiver's business judgment is burdensome or is of inconsequential value to the Receivership Estate, provided, however, the Receiver will not have authority to disavow, reject or terminate ECA's contractual indemnification obligations and the Receiver shall seek approval of the Court to disavow or affirm any contract, agreement, understanding, lease or occupancy agreement in or to which ECA is a party;

(15) To enforce any contract, agreement, understanding, lease or occupancy agreement in or to which ECA is a party and to affirm, and affirm and assign, any contract, agreement, understanding, lease or occupancy agreement in or to which ECA is a party that in the Receiver's business judgment is beneficial to the Receivership Estate; provided, however, the Receiver and his successor(s) shall not: (a) extend, transfer or assign any actual or purported guaranty of any obligations under real property leases to which ECA or any affiliate is a party without the actual or purported guarantor's prior written consent; or (b) extend or modify any lease or occupancy agreement that is guaranteed by Kaplan, Inc. or its affiliates without the prior written consent of Kaplan, Inc. or its affiliates;

(16) To interface with secured creditors of ECA, including, without limitation, periodic updates to Monroe about the progress and status of the Receivership, the sale effort, and other material matters, and provide all non-privileged information provided to any investment banker, financial advisor or other financial advisor retained by the Receiver;

(17) To take any and all acts as may be necessary to conclude this receivership; and

(18) All other powers as may be conferred upon the Receiver specifically by statute, Court rule, or the Court.

**IT IS FURTHER ORDERED** that, during the pendency of the receivership, the Receiver shall prepare on a monthly basis, beginning sixty (60) days after the entry of this Order, a 13-week cash flow forecast, as well as reports setting forth all receipts and disbursements, cash flow,

changes in the assets in his charge, claims against the assets in his charge, and other relevant issues and actions that have occurred during the prior month. The Receiver shall thereafter file such reports, including weekly and cumulative variance reports, with the Clerk of Court within 28 days after the first calendar day of each month.

**IT IS FURTHER ORDERED** that ECA shall provide access to all employees of ECA and deliver or cause to be delivered to the Receiver upon the date of entry of this Order; all keys and other means of accessing the Receivership Property; original signed leases (or copies of such agreements where originals are unavailable); accounting records, including, without limitation, those identifying accounts receivable and payable; originals of agreements with vendors and service providers (or copies of such agreements where originals are unavailable); correspondence files with vendors and service providers; all documentation relating to the maintenance and operation of the property, including, without limitation, operating manuals, building plans and the like; and all bank accounts and other accounts containing or evidencing securities, funds or cash equivalents, including, without limitation, deposit and checking accounts. To the extent that any of the foregoing information is accessible and stored electronically, ECA shall preserve such information and make same accessible to the Receiver. The disclosure of any documents or materials by ECA to the Receiver shall not breach any confidentiality obligation of ECA or waive the attorney-client privilege, work product privilege or any other confidentiality right or privilege, including any common interest privileges, that may exist in favor of ECA and, unless and until further order of this Court, ECA shall retain the right to assert any privilege against any third party.

**IT IS FURTHER ORDERED** that, upon immediate entry of this Order, other than in the furtherance of the implementation of this Order or at the direction of the Receiver, ECA and each

of its directors, officers, agents, employees, managers and all other interested persons are enjoined from interfering with, transferring, selling, disposing or dissipating the property of the Receivership Estate, including, but not limited to, accounts receivable, and are further enjoined from taking any actions that would, directly or indirectly, have an adverse impact on the value of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver, as an officer of this Court, shall enjoy the same immunities enjoyed by this Court.

**IT IS FURTHER ORDERED** that, from the time and date of this Order, a stay of any actions asserting claims or other rights and remedies against ECA, any affiliate of ECA, and/or any actual or purported guarantor that has indemnity rights against any Defendant (whether any Defendant or affiliated entity is initially named in the suit or not), including enforcing, attaching or perfecting liens against property of ECA or any such guarantor, is in effect, enjoining:

(1) The commencement or continuation, including the issuance, employment, or service of process, of a judicial, administrative, or other action or proceeding against ECA or any schools owned directly or indirectly by ECA that was or could have been commenced before the entry of the order of appointment to recover a claim against the Debtors that arose before the entry of the order of appointment;

(2) The commencement or continuation of any action against any actual or purported guarantor of any lease where any Defendant or affiliated entity is the tenant, obligor or lessee on the lease, and where any Defendant has agreed to indemnify such guarantor for any claims related to such lease;

(3) The enforcement or levy against ECA or any Receivership Property of a judgment obtained before the order of appointment;

(4) Any act to obtain possession of Receivership Property from the Receiver or to interfere with or exercise control, over, Receivership Property;

(5) Any act to create, perfect, or enforce any lien or claim against Receivership Property except by exercise of a right of setoff, to the extent that the lien secures a claim against the Debtors that arose before the entry of the order of appointment; or

(6) Any act to collect, assess, or recover a claim against ECA that arose before the entry of the order of appointment; provided, however, nothing herein shall be construed to enjoin or otherwise interfere with the Department of Education's or any accrediting agency's supervision of ECA and enforcement of applicable rules and regulations.

The injunction ordered by the Court in this Order is a preliminary injunction. The Receiver shall lodge a copy of this Order in all jurisdictions where Receivership Property is situated within ten (10) days of the date of this Order in accordance with 28 U.S.C. section 754.

For clarity, if any party asserts a claim against an actual or purported guarantor of a real property lease involving ECA in violation of the above stay, the Receiver may intervene in such action to enforce the stay and/or seek to remove or transfer the action to this Court. This Order does not prohibit any actual or purported guarantor named in any such action from asserting a claim against ECA for indemnification or other relief.

Notwithstanding anything to the contrary, any current or former student of ECA may assert any claim or cause of action against ECA in any court of competent jurisdiction and pursue such claim or cause of action to liquidate such claim at which time such student shall pursue collection of any such liquidated claim only in this Court from the Receivership Estate.

**IT IS FURTHER ORDERED** that (i) the NECB board may employ separate counsel to assist the NECB board in connection with, inter alia, compliance with the terms of this Order and

dealing with the impact of the Order on its operations, and (ii) any professionals employed by ECA, the NECB board, or Monroe and the Monroe Lenders (solely to the extent permitted under the Monroe Credit Agreement) shall periodically be allowed and paid a fee for services and out-of-pocket expenses, as set forth herein in more detail.

**IT IS FURTHER ORDERED** that any debts, liabilities, obligations, claims for relief, or other adverse actions incurred by or asserted against the Receiver or the Receivership Estate arising out of or in the course of this receivership, including without limitation, related to the operation and management of the Business, the administration of the Title IV federal student financial assistance programs, or the teach-out of those certain Teach-Out Schools (as defined in the Motion), whether in the name of the Receiver or ECA, shall be the debt, liability, obligation or otherwise the responsibility of the Receivership Estate only and not of the Receiver individually. The sole recourse of any federal, state, or local governmental agency, or any accrediting agency or any other individual for any claim asserting, or arising out of, a violation by Receiver, ECA, or the Teach-Out Schools of laws, regulations, standards, or common law, at law or in equity, shall be against the Receivership Estate; and neither Receiver, nor any attorney, or agent of Receiver, shall have any liability associated with such debt, liability, obligation, claim for relief, negative administrative action, or other adverse action, unless a Court of competent jurisdiction determines that any such claim is the result of fraud, gross negligence or the willful misconduct of any such party.

**IT IS FURTHER ORDERED** that the Receiver may resign and be discharged of his responsibilities at any time by giving thirty (30) days' prior written notice to this Court; provided however, that the Receiver may petition the Court to approve such resignation and discharge upon shorter notice for good cause shown.

11

**IT IS FURTHER ORDERED** that, notwithstanding anything herein to the contrary, the Receiver has no power or authority to file or authorize the filing of: (i) a petition for relief by or against the Debtors under 11 U.S.C. 101, et seq. (the "Bankruptcy Code"); or (ii) any other action that would constitute a "change of control" under applicable laws or regulations. All power and authority to initiate and file any petition for relief under the Bankruptcy Code, or take any action with respect thereto, shall remain vested solely in ECA. In the event of an involuntary filing of a petition or any equivalent thereof against ECA under the Bankruptcy Code, ECA shall have standing to and may defend against the entry of an order for relief and Receiver may support ECA's defense with respect to such involuntary petition.

**IT IS FURTHER ORDERED** that the Receiver shall not be deemed, now or at any point in the future, to exercise, or have exercised "substantial control," as that term is defined in 20 U.S.C. § 1099c and 34 C.F.R. § 668.174, over ECA, the Business, the Receivership Estate, or the Receivership Property based on Receiver's appointment by this Court or subsequent involvement in the operation and management of the Business and/or the Receivership Property.

**IT IS FURTHER ORDERED** that the Receiver and each of the Receiver's attorneys and agents (collectively, the "Receiver Parties") shall have no liability for any and all claims, liabilities, damages, fees, costs, expenses and charges incurred or arising from their respective acts or omissions in connection with ECA, this Order, the Receivership Property, the Business or the Receivership Estate (collectively, the "Related Matters"), except to the extent that this Court determines by a final judgment (subject to any right of appeal) that such acts or omissions resulted from their willful misconduct, bad faith, gross negligence or fraud. The Receiver Parties shall be held harmless and indemnified by the Receivership Estate for any losses, claims, damages, liabilities and expenses (including attorneys' fees, disbursements and expenses) that any Receiver

12

Party may incur or to which any Receiver Party may become subject in connection with any action, suit, proceeding or investigation brought or threatened against such Receiver Party over an issue arising out of or related to the Related Matters; provided, however, that such indemnity shall not apply with respect to a Receiver Party to the extent that such indemnification claim arises out of such Receiver Party's actions that are determined by a final order of this Court to be willful misconduct, bad faith, gross negligence or fraud. In the event that, at any time whether before or after termination or resignation of the Receiver, as a result of or in connection with the Related Matters, any Receiver Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or the Receiver or any other Receiver Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Receiver Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Receiver Party will be reimbursed by and from the Receivership Estate for its out of pocket expenses, including the reasonable fees and expenses of its counsel. This Section shall survive the termination or resignation of Receiver, and the termination or suspension of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver, its consultants, agents, legal counsel, and other professionals, as well as professionals employed by ECA and the NECB board, shall be paid on a monthly basis. Receiver is authorized to pay and/or reimburse itself from the Receivership Property reasonable receiver fees of at Receiver's standard rates and for its reasonable monthly expenses. Receiver also is authorized to fund a retainer out of Receivership Estate assets in an amount equal to $50,000 and to pay and reimburse Receiver and Receiver's consultants, agents, legal counsel, and other professionals, as well as professionals employed by ECA and the NECB board, from the Receivership Property, for reasonable professional fees and expenses incurred on

or prior to the date of the entry of this Order and hereafter. To be paid on a monthly basis, the Receiver and each professional must file a statement of account with the Court and serve a copy on Receiver and ECA each month for the fees and reasonable monthly expenses incurred in the preceding calendar month. If no objection thereto is filed and served on or within five (5) business days following service thereof, such statement of account shall be paid no later than five (5) business days after the expiration of the applicable objection deadline. If an objection is timely filed and served, the portion of such statement of account that is subject to an objection shall not be paid absent further order of the Court; provided, however, that the portion of such statement of account that is not subject to an objection shall be paid within five (5) business days after the expiration of the applicable objection deadline. In the event objections are timely made to fees and expenses, the objected to portion of the fees and expenses will be paid within five (5) business days of an agreement among the parties or entry of a Court order adjudicating the matter.

**IT IS FURTHER ORDERED** that the Receiver shall apply all income received by the Receivership Estate in the following order and priority:

1. On a monthly basis, the Receiver's fees and reasonable out-of-pocket expenses;
2. On a monthly basis, the fees and reasonable out-of-pocket expenses of the Receiver's consultants, agents, legal counsel and other professionals, as well as professionals employed by ECA and the NECB board;
3. The current expenses relating to the Receivership Estate accruing after the date hereof; and
4. All other expenses necessary to maintain, preserve, and protect the property of the Receivership Estate.

**IT IS FURTHER ORDERED** that this Order shall not be deemed by any federal, state, or local governmental agency, or any accrediting agency, as having triggered a substantive change or change of ownership or control requiring the approval of such agency; further, the actions taken by Receiver during the course of this receivership shall not be taken into account by any such agency in any future determination of whether Receiver is qualified to own, or serve in any capacity with, an institution approved or regulated by that agency.

**IT IS FURTHER ORDERED** that the United States Marshall Service's assistance to enforce the terms of this Order in the form of peace-keeping duties is hereby authorized.

**IT IS FURTHER ORDERED** that the receivership established pursuant to this Order shall remain in effect until further order of this Court and until the receivership is terminated, the Court retains jurisdiction over this matter to (i) amend, supplement or delete any provisions of this Order; (ii) enforce compliance with or punish violations of this Order; (iii) interpret any provision of, and resolve all disputes with respect to, this Order; and (iv) order any additional actions or remedies as may be reasonably necessary or appropriate.

**IT IS FURTHER ORDERED** that the reversal or modification on appeal of this Order shall not affect the validity or any actions taken in good faith by the Receiver, the payment of compensation to which the Receiver and any professional is entitled, or the payment of expenses incurred by the Receiver pursuant to this Order.

**DONE** the 14th day of November, 2018.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**